1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

POWER PROBE GROUP INC. and
POWER PROBE TEK, LLC,

        Plaintiffs/Counter-
        Defendants,

    v.

INNOVA ELECTRONICS CORPORATION,

        Defendant/Counterclaimant.

Case No. 2:21-cv-00332-GMN-EJY

**ORDER**

11   Pending before the Court is Power Probe Group, Inc.'s Motion to Compel Production of
12   Documents.  ECF Nos. 126 (unsealed) and 127 (sealed).  The Court has considered the Motion, the
13   Opposition (ECF No. 131), the Reply (ECF No. 134), information provided at the June 21, 2022
14   hearing (Transcript at ECF No. 159), supplemental briefing submitted by the parties (ECF Nos. 164,
15   166, 168, and 171), information provided at the September 7, 2022 hearing (Transcript at ECF No.
16   174), the Declaration of Innova C.E.O. Ieon C. Chen (ECF No. 176), and the Declaration of Samuel
17   Alexander Long, Jr.  ECF No. 178.

18   **I.      Background**

19   As the parties are aware, the June 21, 2022 hearing led the Court to order supplemental
20   briefing on issues raised in the Motion to Compel as well as during oral argument.  At the September
21   7, 2022 hearing, the Court found the source code relating to the operation of the accused product—
22   the Innova Power Check 5420 (the "Accused Product" or "5420")—was relevant and proportional
23   to the needs of the case.  *Id*. at 33-34.  However, what remained unresolved at the conclusion of that
24   hearing was whether Innova owned, possessed, had control over or a right to the source code.  *Id*. at
25   34-35.  *Id*. at 34.  Ultimately, this prompted the Court to order Innova to do one of two things: either
26   produce the source code to Power Probe or file a declaration authored by counsel or a senior
27   executive stating facts demonstrating that Innova does not own, possess, have custody of, control of,
28   or have a right to the source code for the Accused Product.  *Id*. at 34-35.  The Court stated that if

1   Innova could demonstrate these facts to the Court's satisfaction, Plaintiffs' Motion to Compel

2   Innova's production of source code would be denied and Power Probe would have to seek production

3   of the source code through an international subpoena process such as the Hague Convention.  *Id*. at

4   35-36.

5        On October 5, 2022, Innova filed the Declaration of its CEO, Mr. Chen.  Among other

6   statements made in his Declaration, Mr. Chen states: "Innova does not now have, and it has never

7   had, possession or custody of 5420 software, such as source code or other high-level programming

8   language, and it has no legal right to obtain upon demand such documents …." (ECF No. 176 ¶ 5);

9   "… [T]here has never been any agreement that Innova would have any ownership rights relating to

10  such software." (*id*. ¶ 11); "Innova never paid Basic Aim to develop software for programming of

11  the 5420." (*id*. ¶ 40); "Similarly, Innova is aware of no prohibition against Basic Aim using 5420

12  source code or selling it to anyone, it belonging to Basic Aim, after all." (*id*. at 42); and, "Innova has

13  investigated and reviewed all correspondence, transactions (including purchase orders, invoices, and

14  payments), and documentation vis-a-vis Basic Aim that pertain in any way to the 5420 device, all of

15  which have been confirmed to be consistent with the fact that Innova does not have possession,

16  custody or control, *i.e.,* any legal right to demand, source code for the 5420 device."  *Id*. ¶ 44.

17       On October 6, 2022, counsel for Power Probe filed a Declaration in response to Mr. Chen's

18  Declaration.  Power Probe takes issue with Mr. Chen's failure to address numerous Innova Purchase

19  Orders directed to the Accused Product itself.   Those Purchase Orders include the following

20  language: "All inventions or ideas, whether patenable or not, made, conceived, developed, or

21  acquired by Seller incident to the filling of this order shall vest in and inure to Buyer's sole benefit."

22  It is undisputed that the Seller is Basic Aim and the Buyer is Innova.  Power Probe argues that Mr.

23  Chen does not explain how circuity and any related software for the Accused Product did not vest

24  with Innova by virtue of the Purchase Order language.  ECF No. 178 ¶¶ 11-13.

25       Power Probe also argues that Mr. Chen does not describe steps taken by Innova to obtain the

26  source code from Basic Aim; although, Mr. Chen does state that Innova made no request for such

27  code.  *Id*. ¶ 14; ECF No. 176 ¶ 47.  Finally, Power Probe claims Mr. Chen's statements that the

28  language on Innova's website regarding all Innova products being "researched, developed and

designed" at company headquarters in California relates only to "onboard diagnostic product" is inconsistent with Innova's Answers to Power Probes Complaints in which Innova admits the Accused Product was "researched, developed and designed" in California. *Id.* ¶ 15 *citing* ECF Nos. 22 ¶ 42; 34 ¶ 42.

## II.     Discussion

A party must produce relevant and proportional documents in response to a discovery request that are in the party's possession, custody or control (e.g. documents the party has a legal right to obtain). *Chamber of Commerce of United States of America v. City of Seattle*, 334 F.R.D. 440, 441 (W.D. Wash. 2020). The corollary to this basic rule is that the Court cannot order a party to produce that which the party does not have or have a right to. *See Acosta v. JV Harvesting*, Case No. 17-cv-1225-CAB-WVG, 2017 WL 3437654, at * 3 (S. D. Ca. Aug. 10, 2017) *citing* 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2219 (2d ed. 1994) ("[A] party cannot be required to permit inspection of documents or things that it does not have and does not control.").

In this case, as the moving party, Power Probe has the burden of proving Innova has possession, custody or control of the source code Power Probe seeks. *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). The Court provided Power Probe ample opportunity to meet its burden. In addition to the initial briefing on the Motion to Compel, the Court held a hearing in June 2022, ordered supplemental briefing, and then held a second hearing in September 2022. The Court required Innova, the manufacturer of the Accused Product, to either produce the source code or file a detailed and thorough declaration demonstrating it does not own, possess, control, or have a right to the source code for the Accused Product. ECF No. 174 at 35-36. Innova filed the Declaration of Mr. Chen, its C.E.O. ECF No. 176. The Declaration is unequivocal regarding Innova's lack of ownership, possession, and right to the source code. *Id*.

Nonetheless, Power Probe is correct that Mr. Chen does not address any Purchase Order other than one not pertaining directly to the Accused Product itself. With respect to Power Probe's

argument that Innova fails to explain any attempts to obtain the source code, Mr. Chen is clear that Innova made no such attempt because Innova has no right to the code.

Relying on *M Seven Systems Limited v. Leap Wireless International, Inc*., Case No. 12-cv-1424-CAB (BLM), 2014 WL 12026064 (S.D. Cal. Mar. 17, 2014), Power Probe takes issue with Innova's lack of effort to obtain the source code. M Seven developed source code for a mobile phone launched in 2008 that contained Advanced Wireless Services ("AWS"). *Id*. at * 1. M Seven owned the copyright to the M7 source code. *Id*. Defendant Chris Choi was M Seven's general manager with access to the trade secrets concerning the launched phone. *Id*. Choi left M Seven and took a position with Cricket—a mobile phone service provider. *Id*. In March 2008, Choi offered to purchase the source code from M Seven, which M Seven declined. *Id*. In September 2008, Stanley Park, also an employee of M Seven, left to become Chief of Software Engineering, Project Management, Produce Management and Marketing for ACTScom Korea. *Id*. One month later, in October 2008, Cricket and ACTScom entered into a contract for AWS mobile phones. *Id*. ACTScom USA was incorporated in San Diego in January 2009 with Choi and Park as investor and CFO respectively. *Id*. In February 2009, Cricket launched a phone the plaintiff contended contained stolen M Seven source code and hardware design. *Id*.

Litigation followed and the plaintiff filed a motion to compel. *Id*. After reviewing the discovery standards, the court considered the plaintiff's request for the alleged infringing phone's source code. *Id*. at 3. Considering this issue, the court noted that the defendants produced source code for one phone they marketed, but alleged not to possess copies of the source code for any other phone at issue in the litigation. *Id*. The plaintiff submitted emails from 2009 with source code attached on which defendant Park was copied, but the Court found these emails did not establish the defendants were in current possession of such code, "especially in light of the declarations from Defendants Choi and Park." *Id*.

In contrast, the court also noted that the defendants did not address "custody or control" of the source code. *Id*. Instead, the defendants argued they could not "easily obtain" the code because they had no contract with the entity allegedly in possession, which entity was "embroiled in litigation in South Korea." *Id*. It is in this context the court stated that the "[d]efendants do not state … that

they have made any actual effort or attempts to obtain the source code …; rather, they merely speculate that any efforts would be unsuccessful." *Id*.  Further, Defendants did not state whether they ever had possession, custody or control over source code for phones that was not produced or, if they ever did have such possession, custody or control, what happened to that source code.  *Id*.  The court noted the defendants acknowledged that ACTScom Korea might have source code on their computers in Korea, but "adamantly" denied they knew where the source code was or may be located on such computers.  *Id*. at 4.  Defendant Choi admitted that ACTScom Korea was either owned by him or companies owned by him, as was ACTScom USA, thereby demonstrating Choi had custody or control over all documents, ESI, and other assets owned by ACTScom Korea.  *Id*. (internal citations omitted).  The court found that Choi's "speculations and bald assertions" were insufficient to demonstrate Defendant met his discovery obligations.  *Id*.

The facts of the case at bar are nothing like the facts in *M Seven*.  There is no current or former employee of Innova who is alleged to be a current or former employee of Basic Aim; nor is there a current or former employee of Basic Aim who is alleged to be a current or former employee of Innova.  There are no facts showing common ownership or control of these companies.  There are no facts suggesting Basic Aim, on behalf of Innova, misappropriate patented technology belonging to Power Probe.  Innova unequivocally states it never had possession, custody or control of the source code.  Innova does not profess to have any knowledge of where the source code Power Probe seeks might be found.

In sum, the Court finds nothing to support the conclusion that Innova ever had control, custody or possession of the Accused Product's source code.  There is no evidence to support Innova has any right to the source code other than boilerplate language in the Purchase Orders.  Considering all the evidence before the Court, and Power Probe's obligation to prove Innova is in possession, custody or control of the source code, the Court finds Power Probe had not met its burden.  To find to the contrary would require the Court to conclude Mr. Chen, together with Innova's counsel, filed a declaration knowing it contained material misrepresentations on which the Court was intended to rely.  This is a grave consideration and one the Court must reject.  It is true that Mr. Chen is not a lawyer, but he has three law firms who, together, submitted his Declaration under requirements

established by Fed. R. Civ. P. 11 and the rules of professional conduct.  Unlike the facts in *M Seven*, there is simply nothing that would lead the Court to reasonably conclude the representations by Innova are misrepresentations.  The Court's finding does not preclude Power Probe from testing the information in Mr. Chen's Declaration through other discovery means such as a deposition or written requests.

**III.    Order**

Accordingly, IT IS HEREBY ORDERED that Power Probe Group, Inc.'s Motion to Compel Production of Documents (ECF Nos. 126 (unsealed) and 127 (sealed)), to the extent the production of the source code remained unresolved following the September 7, 2022 hearing (*see* ECF No. 174), are DENIED without prejudice.  If additional information comes to light to call into question Innova's possession, custody or control of source code, Power Probe may bring the issue again to the Court.

Dated this 12th day of October, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE